GALVESTON, H. & H. R. CO. v. ANDERSON.   (No. 7179.)*.

(Court of Civil Appeals of Texas. Galveston. May 18, 1916. Rehearing Denied June 15, 1916.)

1. NEGLIGENCE ⬅85(3) — INFANTS — CARE— PRESUMPTIONS.

A child of very tender years may be presumed as a matter of law not to have sufficient discretion to appreciate dangers obvious to one of maturer age; but no such presumption can be indulged in favor of a boy 14 years old.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 124; Dec. Dig. ⬅85(3).]

2. MASTER AND SERVANT ⬅154(1)—INJURIES TO SERVANT—FAILURE TO WARN.

Where a railroad callboy 14 years old knew and appreciated the danger of trains in the yards where he was required to work as well as any one else, the railroad company's failure to warn him does not constitute negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 308; Dec. Dig. ⬅ 154(1).]

3. MASTER AND SERVANT ⬅95 — INJURIES TO SERVANT—EMPLOYMENT OF MINORS.

Where a railroad callboy 14 years old employed about railroad yards appreciated the danger as fully as an adult, and was as capable as an adult of protecting himself, the railroad company cannot be held liable for injuries, on the theory that it was negligent in employing so immature a person.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 141, 160; Dec. Dig. ⬅ 95.]

Error from District Court, Galveston County; Robt. G. Street, Judge.

Action by James Anderson, by his next friend, against the Galveston, Houston & Henderson Railroad Company. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

John L. Darrouzet, of Galveston, and Jno. T. Garrison, of Houston, for plaintiff in error. Geo. G. Clough, of Galveston, for defendant in error.

PLEASANTS, C. J. This suit was brought by W. J. Anderson, as next friend of his minor son, James Anderson, against appellant railroad to recover damages in the sum of $10,000 for personal injuries to said minor, alleged to have been caused by the negligence of the railroad company.

Plaintiff's petition alleges in substance that said James Anderson, a minor 14 years of age, was on or about the 27th day of July, 1913, in the employment of the defendant in the capacity of night callboy in defendant's yards in the city of Galveston, and, while in the performance of the duties of his employment, was struck and run over by a train operated by defendant in its said yards, and received injuries which are fully described in the petition. The acts of negligence upon which the cause of action is based are thus alleged in the petition:

"Plaintiff would represent and show to the court that the injuries received by him were the immediate and proximate result of the negligence of the defendant, its agents, servants, and employés for this, that he was but a child of 14 years of age, and small and undeveloped for one of such years; that the defendant, its agents, servants, and employés were negligent in employing him in such dangerous occupation as that of callboy, which required him to go in and about the yards where trains were switching, and at nighttime; and the defendant, its agents, servants, and employés were negligent in permitting him to go in, upon, and about said yards where trains were switching and at nighttime; that said yards are not lighted, so that employés and persons in and about said yards might see the approach of trains; that plaintiff was inexperienced, and the hazardous and dangerous occupation and employment of a callboy was not made known to him by the defendant, its agents, servants, and employés, and he was not cautioned or warned by the defendant, its agents, servants, or employés of the hazardous and dangerous nature of such employment, and such hazardous and dangerous employment was not realized by him.

"Plaintiff would further represent that the defendant was further negligent in the premises for this, that the train of cars which struck plaintiff and caused the injuries hereinbefore mentioned was not protected with a lookout; that is to say, no person was stationed at the front end of said cars to guard against injuries to persons in and about said yards, and that said train of cars so propelled was not equipped with lamps or headlight, or any other character of warning signal to warn or notify persons, having business in said yards, of the approach of said train; that no whistle was being blown, nor bell rung, and there was nothing whatever upon the front or moving end of said car which struck plaintiff to give any notice or warning of the approach of said train of cars; that the night in question was very dark, and that a proper lookout was not kept by any employé or switching crew of the defendant operating said train, and plaintiff is informed, and upon such information charges the fact to be, that said train consisted of 13 to 15 cars between the end which struck the plaintiff and the engine which propelled the said cars, and that the headlight of such engine, if any there was, was completely obstructed by said cars, and that no signaling device and no light of any character was maintained at the front or moving end of said cars to apprise the employés of the defendant, and particularly the plaintiff herein, of the approach of such cars.

"Plaintiff further charges that the defendant was negligent in the premises in that such switching engine or train was operated with a short crew; that is to say, only two switchmen were working at the time of such injury in conjunction with such switching engine, and that two switchmen to a switching crew are wholly insufficient to properly and adequately give warning signals of the presence and movements of such switching engine and train, on a dark night in an unlighted railroad yard, and to ap-

prise the employés, such as plaintiff, of the movements of such a switching engine or train."

The defendant's answer denies generally and specially all of the allegations of negligence alleged in the petition, and also charges, in effect, that plaintiff's injuries were due to acts of negligence on his part, which are fully set out in the answer, but the nature of which need not be stated in this opinion.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $4,000.

The evidence shows that James Anderson, at the time of his injury, was 14 years old. He had been in the employment of appellant as night callboy in appellant's yards at Galveston for three months; the duties of his employment being to take messages, call crews, and do other errands which required him to go in and about all parts of appellant's yards at night. His home, at the time of the injury and for some time prior thereto, was within a few blocks of appellant's yards, and he was thoroughly familiar with the general use of the yards for switching and transfer purposes, and knew that trains were almost constantly being operated over the various tracks in said yards. On the night he was injured, with the permission of Mr. Cassidy under whom he was working, he started to his home to get his night lunch, which he had neglected to bring with him when he came to his work that evening. While riding on his bicycle along between two of the tracks in the yard, on his way to his home to get his lunch, he was struck and knocked down by a train which was backing down behind him, and received serious injuries. No one saw the accident. His testimony as to the occurrence is as follows:

"I was going along between Forty-Fourth and the yard office, and before I ever could turn around or anything something behind hit me, and that is the last I remember until I got to the hospital, and they gave me ether and then came to. I was about half way between the yard office and Forty-Fourth street when I was hit. I was right this side of the main line when I was hit, north side of the main line. I was on my wheel. I was heading east to Forty-Fourth and going to go down Forty-Fourth to get my lunch. I was living at 4412 F. I usually took that route in going to and from my work and to and from my lunch; I went down this side of the main line and took Forty-Fourth, and went home to get my lunch, and go from home down there the same way. That is the only way I had to go to work, unless I would go down Thirty-Seventh, and then I would have to go over tracks. When I started out of the yard office that night to go and get my lunch, I never heard, seen, or observed anything until all at once something hit me, and that is all I remember, hit me up here (witness indicated the right side of his face). I don't know exactly how many feet I had traveled on my bicycle from the yard office before I was struck. I guess it was about 40 feet, or something like that, somewhere along there. I know the yard office sits about in the middle of Forty-Fifth and between Forty-Fourth and Forty-Fifth, and I traveled half way from the yard office to Forty-Fourth. The yard is lighted at nights only by switchlights and lights on trains; but I didn't see a light on any train or box car either; there was no light at all, only the switchlights. The switchlights are red and green. The switchlights are two feet or a little over from the ground. There is no electric light at Forty-Fourth street and Market. There is one on Forty-Fourth and Winnie. There are no pole lights there in the yard anywhere. The night I was struck, it was a dark night. When I started out on my bicycle to ride down there to Forty-Fourth street to go get my lunch, I did not see or hear any signals of any sort. I had my lantern with me, one of the switchmen's lanterns, one that the switchmen use. I had it in my hand on the handlebars. I didn't come to until they gave me ether in the hospital."

The undisputed evidence shows that James Anderson was possessed of at least the average mind and intelligence of boys of his age and had no physical infirmity of any kind. He started to the public school when he was seven years of age and made his grade every year except the last in which he attended school, which was his thirteenth year. He testified that he knew the dangers incident to his employment, and that his father tried to persuade him not to continue in the service because it was dangerous. Previous to taking employment with appellant he had been employed in a similar capacity by the Southern Pacific Railway Company. In regard to his knowledge of the danger incident to his work, he states in his testimony:

"I knew just about how dangerous it was as anybody could tell me. They always warned every one over at the Southern Pacific about the danger. I knew it was dangerous without anybody telling me. I had been warned at the Southern Pacific, and warned by my father it was dangerous. They might have told me it was dangerous. I already knew that; but they could have told me about the cars. They never explained nothing when I went to work there. They could have told me the roads not to go, and the exact road to go, and where to go. They could have told me just what tracks they would come on, and what tracks were in use, and what was not. I had been there three months, and it seemed to me they used the main track and all for switching. I had seen that time and again. After I had worked there, I seen it. At the time I was injured, I knew that constantly backward and forward trains were moving on their tracks out there. I knew there were no lights, electric lights in the yard."

In the second paragraph of the charge to the jury, the trial judge states the grounds of negligence relied on by plaintiff as follows:

"(a) That the service was a dangerous one and that in consideration of his immaturity in age, knowledge, and experience the defendant was negligent in employing him in such service at all; (b) that it was negligent in not warning and instructing him with respect to the dangers of the service; (c) in not having its yard lighted; (d) that he was struck by a negligently moving train, which was not protected by a lookout or with headlight or lamps at the end of the train approaching the point where he claims he was hurt, and that no signal was given of such approach."

The fourth and fifth paragraphs of the charge are as follows:

"(4) The defendant owed to the plaintiff the duty of giving him such warning and instruction with respect to the dangers of the service as the immaturity of his years, and degree of

capacity, intelligence, knowledge, and discretion, would require to enable him to perform the service without unnecessary danger; and a failure to discharge such duty would be negligence. But the defendant will be excused from performing such duty, notwithstanding the plaintiff's immaturity of years, if it appears from the evidence that he in fact had the capacity, intelligence, knowledge, and discretion to understand the dangers of the service, provided he did in fact understand and appreciate such dangers and the extent thereof.

"(5) The defendant is liable for such alleged injuries shown by the evidence as were proximately caused in the manner stated as may be shown by the evidence, by the negligence of the defendant, its agents, or servants, if any, except as otherwise herein instructed. It is not otherwise liable in this case. Negligence is the failure to use such care for the safety of another as one of ordinary prudence would use under the same or similar circumstances."

[1, 2] The first assignment of error presented in appellant's brief complains of the fourth paragraph of the charge above set out, on the ground that it submits an issue of negligence not raised by the evidence. This assignment must be sustained. The question of the duty of a master to warn a minor or inexperienced servant of the dangers incident to his work has generally arisen in cases in which the failure to give such warning is offered as an excuse for the contributory negligence of the servant. In those cases it has been uniformly held that, unless there is some evidence tending to show that, on account of immature age, the minor was so wanting in intelligence and discretion as to be unable to appreciate the dangers of his employment, it is error to submit to the jury the question of the capacity of the minor to appreciate the dangers of the service. A child of very tender years may be presumed as a matter of law not to have sufficient discretion to appreciate dangers that would be obvious and apparent to one of maturer age; but no such presumption can be indulged in favor of a boy 14 years of age. Railway Co. v. Shiflet, 94 Tex. 131, 58 S. W. 945; Railway Co. v. Trigo, 101 S. W. 257.

When the failure to warn is relied on as an independent ground of negligence authorizing a recovery, it goes without saying that such failure on the part of the defendant must have been a proximate cause of plaintiff's injury. We think the evidence before set out conclusively shows that the failure of defendant to warn plaintiff of the danger of being struck by some train operated in its yards could not have in any way contributed to plaintiff's injury. This danger was obvious and apparent, and plaintiff admits that he knew just as well about how dangerous it was as anybody could tell him. We do not think there is any room for difference in the conclusion from plaintiff's own testimony that the failure of defendant to warn him, when it employed him as night callboy in the railroad yards, that in going about over the yards he must look out for moving trains had no causal connection with plaintiff's injury. According to his own testimony, he was not put to work in a place of danger of which he was ignorant, or of which he was incapable of appreciating. Such being the state of the evidence, the failure of defendant to warn plaintiff does not constitute actionable negligence, and that ground of recovery should not have been submitted to the jury. Oil Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111.

[3] The charge is further objected to under the third assignment of error on the ground that, when the second and fifth paragraphs of the charge are considered together, the charge submits as ground of recovery the alleged negligence of defendant in employing a person of the age and inexperience of plaintiff in a service as dangerous as that in which plaintiff was employed. We think this objection to the charge should also be sustained. As we have before stated, there is nothing in the evidence tending to show that plaintiff was not possessed of the intelligence and discretion sufficient to enable him to fully recognize and appreciate the dangers of the service, or that he was not just as capable of protecting himself from the dangers of the service as an adult. It would be an unwise rule to prohibit the employment of a person under 21 years of age as night messenger or callboy in railroad yards, on the ground that a person so employed incurred the risk or danger of being struck by a train; and to allow plaintiff to recover in this case, on the ground that defendant was negligent in employing him to do the work, would in effect bar the employment of persons under 21 years of age as night messenger boys in railroad yards.

If any errors are pointed out in the remaining assignments, they are not likely to occur upon another trial; and therefore said assignments will not be discussed.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.